UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,
    *Plaintiff,*

-vs-

Case No. 3:24-CR-19-jdp

ADAM WESTBROOK,
    *Defendant.*

## DEFENDANT'S REPLY TO GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

The Defendant, Adam Westbrook, files this Reply to the Unites State's Brief in Opposition to Defendant's Motion to Suppress. The defense motion sought to suppress the contents[1] of the search of an iPad, seized by law enforcement from Westbrook's office, because the initial seizure, and the seventy-two day delay in obtaining a search warrant after the seizure were unreasonable under the Fourth Amendment. In its Response, the Government argued that the seizure was lawful both because Westbrook had no expectation of privacy in the office and that the seizure was made pursuant to the plain view exception to the Warrant. The Government further claims that its seventy-two day delay in obtaining a warrant was not unreasonable because Westbrook's possessory

---

[1] Westbrook is charged with sending two Snapchat videos to a friend on January 27, 2024, that contained alleged child pornography. The specific images are of a four-year-old child naked, and the dispute centers around whether the videos contain the lascivious exhibition of genitals. The search of the iPad revealed a brief text conversation between Westbrook and the friend on November 23, 2023, in which they exchanged a total of three videos, two of which involved subjects engaged in solo sexual activity. The age of the subjects in these videos is unknown; Westbrook's friend commented on one of the videos that the subject of the video "said he's 18 but doubt that lol looks 14 if not younger." Westbrook has not been charged in relation to this exchange.

interest in his iPad was "essentially non-existent." This Reply will address these arguments in turn.

I. **Westbrook Did Have an Expectation of Privacy in his Office.**

Employees have an expectation of privacy in their workplace. *See O'Connor v. Ortega*, 480 U.S. 709, 716 (1987) ("Within the workplace context, this Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police."). This expectation is not eliminated simply because an individual is employed by the Government, rather than in the private sector. *See United States v. Shelton*, 997 F.3d 749, 761 (7th Cir. 2021 ("Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer."). Nonetheless, the Government argues that Westbrook did not have an expectation of privacy because of language contained in the Outagamie County Employee Handbook, and because he tendered his resignation two days prior to the seizure of his iPad. Neither fact takes the iPad outside the protections of the Fourth Amendment.

    **A. Language in the employee handbook did not eliminate Westbrook's reasonable expectation of privacy.**

The Government first argues that Westbrook had no expectation of privacy in his office because the Outagamie County Employee Handbook delineated circumstances in which the County could search portions of the office. The Handbook does state, "the county makes no assurance of an expectation of privacy" regarding the contents of storage devices provided by the county and goes on to note that the county reserves the right to "inspect personal property on county premises where reasonable suspicion exists" that a container might contain contraband. (R. 36-3, at 2-3). But these exceptions address the county's role as employer. In other words, the county is notifying employees that

county representatives in their capacity as employer reserve the right to inspect portions of an employee's office in certain circumstances. This does not transform an office into a public location where law enforcement, or anyone else, can simply waltz in and look at around at his or her leisure. *See O'Connor v. Ortega,* 480 U.S. at 717 ("[c]onstitutional protection against unreasonable searches by the government does not disappear merely because the government has the right to make reasonable intrusions in its capacity as employer…") (internal citations omitted).

Here, we know that Westbrook was the Human Resources Director. *See* R. 25, Ex.1. Given the nature of his position, his office presumably had confidential materials within that would have been secured from the public and other employees. His office had a locking door limiting access. *Id.* That the County reserved the right to access some of the storage containers in his office in its capacity as his employer does not otherwise eliminate Westbrook's reasonable expectation that his office would be private from other visitors including the police.

### B. Westbrook's expectation of privacy did not immediately terminate upon tendering his resignation.

The Government further argues that whatever expectation of privacy Westbrook would have had in his office was terminated by his resignation. In support of this proposition, the Government cites to two cases. The first, *Archer v. Chisolm*, 191 F.Supp. 3d 932 (E.D. Wis. 2016), involved the search of a work computer of a former employee who had transitioned to a new employer over a month before the search in question. The court found that the former employee had effectively abandoned his property by leaving it after securing different employment, thereby eliminating her expectation of privacy therein. *Id.* at 943-44 The Government also relies on *United*

*States v. Procknow*, 784 F.3d 421, 426-27 (7th Cir. 2015), which held that a tenant of a hotel no longer retained an expectation of privacy in the room after their right to occupancy of the room had been terminated. There, the hotel "ejected" Procknow after he was arrested by officers in the hotel lobby. *Id.* Both cases are distinguishable.

Here, Westbrook had a discussion with Corporation Counsel Kyle Sargent on Saturday, February 17, 2024. (R.37). The Government asserts that his resignation occurred before SA Voland's February 19, 2024, search of Westbrook's office and the seizure of his iPad, but Sargent's letter formalizing this resignation is undated making it unclear whether the resignation was actually accepted prior to SA Voland's search and seizure. But even assuming that Westbrook's resignation did pre-date the seizure of his iPad, it would have been by no more than two days. As documented in Sargent's letter, the retrieval of Westbrook's personal items was contemplated, discussed and planned for by the parties. *See* R. 37. Sargent claims he had coordinated with Westbrook's family to do so. *Id.* Thus, unlike *Archer*, the property in question had not been abandoned at an old office for more than a month, but was in the process of being retrieved by Westbrook's representative. And, unlike *Prockow*, Westbrook's privacy interest in his office was neither limited by an express contract designed for limited occupancy, nor terminated without discussing the expectation that his personal property would be secured for his retrieval.

Ultimately, Westbrook's office was a private office with a locking door. While his employer would have had the ability to access his office—and the containers therein—under certain circumstances in its capacity as his employer, he reasonably expected that the office was otherwise private, and it was. Though not clear when his

4

resignation was accepted, it was tendered on February 17, 2024. As part of this resignation, he made arrangements to have family members retrieve his personal belongings. He continued to expect those items would be privately secured until their retrieval, and his resignation did not transform them into items held in a publicly accessible place. As such, they remained under the protection of the Fourth Amendment when SA Volund warrantlessly seized them on February 19, 2024.

## II. The Plain View Exception Did Not Authorize the Warrantless Seizure of Westbrook's iPad.

The Government next claims that the iPad was seized pursuant to the plain view exception to the Fourth Amendment's warrant requirement. Specifically, they argue that SA Voland was lawfully present in Westbrook's office, observed his iPad in plain view, and that its incriminating nature was immediately apparent (i.e., there was probable cause to believe it contained child pornography). But the application of the plain view exception to the facts of this case, where there was no exigency preventing SA Volund from obtaining a warrant, extends the plain view doctrine too far and would render the Fourth Amendment's warrant requirement moot.

As an initial matter, Westbrook does not dispute that SA Voland was lawfully in his office when he seized the iPad; he had been granted consent to search by Westbrook's co-worker Kyle Sargent. However, while the iPad was in plain view—sitting on top of a box of Westbrook's personal items—it was only so because Sargent had placed it there. SA Volund's ability to see the item in plain view was due to Sargent's actions, taken after he spoke to Volund and was aware that he would be coming to search the office for electronics.

But more to the point, "plain view alone is never enough to justify the warrantless seizure of evidence ... [and] no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 468 (1971) (plurality opinion). The Fourth Amendment protects privacy and property rights equally. *See Arizona v. Hicks*, 480 U.S. 321, 328, (1987) (citation omitted) ("The Fourth Amendment injunction against unreasonable searches is quite different from that protected by its injunction against unreasonable seizures, neither the one nor the other is of inferior worth or necessarily requires only lesser protection."). Requiring some exigency to seize an item in plain view does not protect an individual's privacy right. *See Horton v. California*, 496 U.S. 128, 133 (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy."). Rather, because a seizure implicates a possessory interest, any exception to the requirement that a seizure must be made pursuant to a warrant "must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches." *Id.* The requirement that a plain view seizure be accompanied by a showing of exigency protects that possessory interest.

Admittedly, Seventh Circuit case law on this point is limited, and the commonly recited requirements for the application of the plain view doctrine do not reference exigent circumstances. *See, e.g., United States v. McGill*, 8 F.4th 617, 622 (7th Cir. 2021) (noting the need for officers to be lawfully present in location of seizure, item to be in plain view, and the incriminating nature of the item to be immediately apparent). It is unclear why. This requirement is a fundamental limit on the doctrine, "implicit in the statement of its rationale." *Coolidge*, 403 U.S. at 468.

The Sixth Circuit, however, is explicit in acknowledging this limitation on plain view seizures. In *Hopkins v. Nichols*, 37 F.4th 1110 (6th Cir. 2022), an officer, lawfully present on the Plaintiff's land through the open fields doctrine, seized the plaintiff's cattle after determining there was probable cause of animal cruelty. *Id.* at 114. The court did not dispute that the officer was lawfully present, that the cattle were in plain view, or that there was probable cause for animal cruelty. Nevertheless, the Court determined the seizure was not justified, noting "[t]he open fields doctrine is an exception to the Fourth Amendment prohibition on unreasonable searches, not seizures…[and] 'exigent circumstances' are needed for an officer to lawfully seize the property under the plain view exception." *Id.* at 1118.

Similarly, in *United States v. McLevain*, 310 F.3d 434 (6th Cir. 2002), the Sixth Circuit explained the connection between an exigency and the lawful right to access (i.e., seize) an object. There, an officer seized and drug-tested items—located in plain view—after a search warrant authorizing the seizure of a fugitive had already been executed and the man located. *Id.* at 443. The court noted "this requirement of a lawful right of access means that generally an officer should get a warrant if possible before he seizes an item in plain view. He cannot seize absent exigent circumstances. If he could obtain a warrant, then he cannot use the 'plain view' exception for the evidence." *Id.* (citing *Horton v. California,* 496 U.S. at 137, fn 7). The court determined there was not an exigency and suppressed the evidence, noting that the evidence in question "was not going anywhere," and the officer "should have taken his evidence of probable cause to a magistrate rather than attempting to seize it under the 'plain view' exception." *Id.*

Here, no exigency existed.  SA Voland had been in communication with Corporation Counsel Kyle Sargent both before and after Sargent moved Westbrook's iPad into plain view.  Sargent had told the officer he would keep the office secure until he got there, and he had.  There is no reason to think he would not have continued to do so.  Finally, Westbrook was in custody, so there was no risk that he would immediately access the office.  As was the case in *McLevain*, the iPad was not going anywhere.  It was secure, and SA Voland had ample time to secure a warrant.  There was no exigency to excuse his failure to do so.

A search warrant should describe with particularity not only the locations to be search, but also the items to be seized.  *See Marron v. United States*, 275 U.S. 192, 196 (1927) ("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.").  This particularity requirement prescribes not only the scope of the authorized search, but also the scope of the authorized seizure.  It is one thing to allow an officer who is executing a warrant to seize an item not identified in the warrant but that is in plain view and for which there is probable cause connecting it to a crime.  But permitting the seizure of Westbrook's iPad under the plain view doctrine is quite another.  SA Volund could have obtained a warrant before he went to the office and confirmed there were electronics there.  He could have sought a warrant after doing so.  Instead, he seized first and sought a warrant (much) later.  Permitting this type of preemptive seizure when there are no exigencies afoot creates a perverse incentive for law enforcement.  It encourages officers to seize without a warrant, and ignores the "point of the Fourth Amendment," which is that inferences concerning evidence "are to be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often

competitive enterprise of ferreting out crime." *United States v. Johnson*, 333 U.S. 10, 13-14 (1948). Simply because law enforcement are lawfully within an otherwise private space cannot dispense of the need for a neutral and detached magistrate to make a probable cause determination when possible. But ignoring the exigency requirement as applied to the plain view doctrine does just that.

There was no exigency when SA Volund seized Westbrook's iPad. The officer could have sought a warrant, but simply found it more convenient not to. This was particularly problematic because, since the item was taken outside of the warrant process, the seizure was not documented in a return on warrant, and Westbrook has no knowledge of the seizure for months. This type of officer-authorized seizure from a non-public location is precisely what the Fourth Amendment seeks to prevent, and it should not be sanctioned simply because the officer found the iPad on top of a box of personal property on Westbrook's desk.

### III. The Seventy-Two Day Delay Between When Law Enforcement Seized Westbrook's iPad and When They Obtain a Warrant to Search it was Unreasonable.

Even if the Government's warrantless seizure of Westbrook's iPad did not violate Fourth Amendment, the seventy-two day delay in obtaining a search warrant did. In its response, the Government correctly notes that there is no "bright-line test" establishing when a seizure reasonable at its inception becomes unreasonable due to its duration. *See United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir 2012). Instead, a court must consider factors such as the evidentiary basis for the seizure, the length of the seizure, the degree of intrusion into the defendant's possessory interest, and whether the government "diligently pursued their investigation" following the seizure. *Id*.

The Government's primary argument is that Westbrook's possessory interest in his iPad was "essentially non-existent," because he was either in custody, or prohibited from accessing electronics by his conditions of pre-trial release. But this fails to acknowledge that a defendant's possessory interests are not limited to their actual in-person use of property. The Government correctly notes that possessory rights may be diminished while someone is in custody. However,

> the cases do not indicate that once a person is in custody, he automatically forfeits a possessory interest in everything that does not remain on his body while in jail. To find that a person's possessory interest in his phone diminishes beyond constitutional protection the moment he is incarcerated would be like saying a person also suddenly lacks a cognizable possessory interest in his journal, his mail, or his bank account once he is incarcerated.

*United States v. Grills*, 2019 WL 5587328, * 8 (unpublished, E.D. Wis., Oct 30, 2019).

Indeed, an iPad, like a computer or cellphone, serves a number of purposes which would not require Westbrook's personal control or use. It houses personal information and photos, could permit others to access necessary online and email accounts belonging to Westbrook, and can provide a source of entertainment to other family members. One's property interest survives even when he is permanently prevented from physically possessing the property ever again. *C.f. Henderson v. United States*, 575 U.S. 622, 625-626 (2015 (recognizing convicted felon retains right to have firearm transferred to a third party even when unable to possess the firearm). Thus, while Westbrook's possessory interest was diminished because of his incarceration and subsequent release conditions, it was not diminished beyond constitutional protection. *See Gills,* 2019 WL 5587328, * 7

("The simple fact of his incarceration did not diminish his property interest in his phone beyond constitutional protection.").

The Government also argues that Westbrook failed to request the return of his iPad, showing that its prolonged seizure did not interfere with his possessory interests. While it is true that efforts to secure the return of property is one form of evidence establishing a interference with a possessory interest, the absence of this evidence has little probative value here. Because Westbrook received no notification nor documentation that the property had been taken, he had no reason to contact the Government about the return of his iPad.[2] Westbrook was told that his personal property, including his iPad, was being returned to his family. He was secure in the belief that this had happened, and did not ask the Government to return it because he was unaware that they had taken it from him.

What the Government does not explain is why officers sat on Westbrook's iPad for over two months without seeking a warrant. There is no claim by the Government that they needed this time to develop addition facts necessary to seek the warrant. Nor would any such claim be persuasive. A quick comparison between the search warrant application for Westbrook's house, submitted on February 15, 2024, and the warrant application submitted on April 30, 2024, related to the search of his iPad, shows that all the information submitted on April 30, 2024, was known prior to the time that the iPad was seized. *See* R. 25, Ex. 2 and 3. Absent a plausible explanation to the contrary, the only remaining conclusion is that law enforcement failed to act diligently. *See Gills*, at

---

[2] There was no discovery provided to the defense addressing the seizure of the iPad, or any other electronics from Westbrook's office, until after the search warrant was issued for those items. Undersigned counsel first learned that the Government had seized electronics from Westbrook's office during an in-person meeting with the prosecution on April 30, 2024, the same day that the Warrant was obtained. This information was not relayed to Westbrook until after the warrant for the iPad had issued.

*8 ("There is simply no reason why local law enforcement, or federal authorities, could not promptly seek the warrants as soon as it was practical to do so, leading the Court to conclude that the delay was the result of dilatoriness."). "When police neglect to seek a warrant without any good explanation for the delay, it appears that the state is indifferent to searching the time and the intrusion on an individual's possessory interest is less likely to be justified." *Burgard*, 675 F.3d at 1033.

The Government notes that longer delays have been upheld in other cases, highlighting that fact-specific nature of this inquiry. While true, each of the cases relied upon by the Government involved either consent by a party for the seizure in question or an explanation for the delay in obtaining the warrant. In *United States v. Stabile*, 633 F.3d 219, 235 (3d Cir 2011), the court, though troubled, found a three-month delay reasonable. There, the Court noted that the initial seizure was made pursuant to consent rather than probable cause. "This distinction matters" because "where a person consents to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires voluntary tender of property." *Id.* at 235. The Court further accepted, though not without reservation, the government's stated explanation for the delay, which was that the lead detective had been unavailable because he had been assigned to a Secret Service detail protecting the President. *Id*. at 236. Similarly, in *United States v. Christie*, 717 F.3d 1156 (10th Cir. 2013), the Court upheld a five-month delay. Again, this involved the search of a computer that was seized pursuant to consent, and in a case where the agent described having alternative undercover assignments that were higher priority and took him out of the office during that five-month period. *See id. at* 1163. Finally, in *United States v. Howe,* 545 Fed. App'x. 65,

66 (2d. Cir 2013), the Court determined that a thirteen-month delay was not from lack of diligence, but instead excusable error. The court noted that the agent had sworn out an affidavit for warrant the day after the seizure, and did not seek a federal search warrant because he mistakenly believed that his affidavit had had been submitted to a state court. *Id.* at 66.

Ultimately, this is a fact specific inquiry requiring the Court to weigh competing interests. But unlike cases where courts have found a lengthy delay between seizure and search reasonable, the initial seizure of Westbrook's iPad was not based on consent, and the Government has offered no explanation for why a warrant was not diligently sought. A lack of diligence without justification was enough to find delays of fifty-five days, thirty-one days, and even twenty-one days unreasonable. *See United States v. Grills*, 2019 WL 5587328, *6 (E.D. Wis. Oct 30, 2019); *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019); *United States v. Mitchell*, 565 F.3d 1347, 1352 (11th Cir. 2009. The delay here, seventy-two days, was far greater.

"When an officer waits an unreasonably long time to obtain a search warrant, in violation of the Fourth Amendment, he cannot seek to have evidence admitted simply by pointing to that late-obtained warrant." *See Burgard*, 675 F.3d at 1035. The delay here was dilatory and unreasonable. Though Westbrook's detention and subsequent conditions of release diminished his possessory interest in his iPad, it did not place it beyond constitutional protection. *See Grills*, 2019 WL 5587328, *7. This nearly two-and-a-half month delay diminished Westbrook's possessory interest in his iPad, and offended the Fourth Amendment. This delay exceeds those found to have been

unreasonable in similar circumstances, and the Court should find that it was unreasonable here as well.

### IV.     CONCLUSION.

As stated herein, the seizure of Westbrook's iPad, and the seventy-two-day delay in obtaining a search warrant after the seizure both violated the Fourth Amendment. Any evidence obtained from the subsequent search of his iPad should be suppressed.

Dated: August 15, 2024

        /s/_____
Atty. Nathan Otis
Nicholson Goetz & Otis, S.C.
22 E Mifflin St. Suite 300