UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

              Plaintiff,

  -vs-                                 Case No. 24-CR-19-JDP

ADAM J. WESTBROOK,                   Madison, Wisconsin
                                     September 16, 2024
              Defendant.         10:05 a.m.

_____

STENOGRAPHIC TRANSCRIPT OF PLEA HEARING
HELD BEFORE CHIEF U.S. DISTRICT JUDGE JAMES D. PETERSON

APPEARANCES:

For the Plaintiff:

                  Office of the United States Attorney
                  BY:   LOUIS GLINZAK
                       ELIZABETH ALTMAN
                  Assistant United States Attorneys
                  222 West Washington Avenue, Suite 700
                  Madison, Wisconsin  53703

For the Defendant:

                  Nicholson Goetz & Otis, S.C.
                  BY:  NATHAN OTIS
                  22 East Mifflin Street, Suite 300
                  Madison, Wisconsin  53703

Also appearing:   ADAM J. WESTBROOK, Defendant

Jennifer L. Dobbratz, RMR, CRR, CRC
U.S. District Court Federal Reporter
United States District Court
120 North Henry Street, Rm. 410
Madison, Wisconsin  53703
(608) 261-5709

```
 1          (Proceedings called to order at 10:05 a.m.)
 2              THE CLERK:  Case No. 24-CR-19-JDP-1, the United States
 3     of America v. Adam J. Westbrook.  Court is called for a plea
 4     hearing.
 5          May we have the appearances, please.
 6              MR. GLINZAK:  Good morning, Your Honor.  Louis Glinzak
 7     and Elizabeth Altman for the United States.
 8              THE COURT:  Good morning.
 9              MS. ALTMAN:  Good morning.
10              MR. OTIS:  Good morning, Your Honor.  Adam Westbrook
11     appears in person with Attorney Nathan Otis.
12              THE COURT:  Good morning to both of you.
13              THE DEFENDANT:  Good morning.
14              THE COURT:  All right.  We're here for a plea hearing
15     that's based on a written plea agreement that's been provided to
16     the Court.
17          Mr. Otis, have you and Mr. Westbrook received a copy of the
18     indictment?
19              MR. OTIS:  Yes.
20              THE COURT:  Would you like it read?
21              MR. OTIS:  No.
22              THE COURT:  Mr. Glinzak, would you state the penalties
23     that Mr. Westbrook would face if he were convicted?
24              MR. GLINZAK:  Yes, Your Honor.
25          Mr. Westbrook was charged with one count for a violation of
```

 1    Title 18, United States Code, Section 2252(a)(2).  This carries

 2    a mandatory minimum penalty of 5 years in prison and maximum

 3    penalties of 20 years in prison, a $250,000 fine, a period of

 4    supervised release for life, a $100 special assessment, an

 5    additional $5,000 special assessment pursuant to 18 U.S.C.

 6    Section 3014 unless the defendant is found to be indigent, up to

 7    a $35,000 special assessment pursuant to 18 U.S.C. Section

 8    2259A, registration as a sex offender under the Sex Offender and

 9    Notification Act [verbatim], and entry of an appropriate

10    restitution order.

11        Finally, Your Honor, if the defendant has a prior

12    conviction as described in 18 U.S.C. Section 2252(b)(1), the

13    penalties related to prison time increase to a mandatory minimum

14    penalty of 15 years in prison and a maximum penalty of 40 years

15    in prison.

16        THE COURT:  Mr. Otis, have you talked with

17    Mr. Westbrook about the charges he faces, the penalties that

18    could result, and whether he has any defenses to the charges?

19        MR. OTIS:  Yes.

20        THE COURT:  Mr. Westbrook, my understanding is you're

21    prepared to enter a plea of guilty today; is that correct?

22        THE DEFENDANT:  That is correct.

23        THE COURT:  The purpose of our hearing today is to make

24    sure that you're capable of proceeding, that your plea is really

25    a voluntary one, that you understand the charges you face and

1    the penalties that could result.  I also have to make sure

2    there's a factual basis for the plea, which means there's reason

3    for me to believe that you're actually guilty and that you'll

4    admit you committed the offense.  I also need to review some of

5    the rights you would give up if you choose to plead guilty.

6        I'm going to have to ask you some questions that you'll

7    have to answer under oath, so I'm going to ask you to stand up

8    and raise your right hand, and the clerk is going to swear you

9    to tell the truth.

10              **ADAM J. WESTBROOK, DEFENDANT, SWORN**

11        THE COURT:  I need to make sure that you understand now

12    that you've sworn to tell the truth, if you knowingly give any

13    false answers to my questions, you could be prosecuted for

14    perjury.  Do you understand that?

15            THE DEFENDANT:  I do.

16        THE COURT:  My first questions are to make sure that

17    you're capable of proceeding today.

18        Tell me how old you are and how much formal education

19    you've had.

20            THE DEFENDANT:  I am 35 years old, and I have a Juris

21    Doctor.

22        THE COURT:  You signed a plea agreement that was

23    several pages long.  Were you able to read it and understand it

24    before you signed it?

25            THE DEFENDANT:  I was.

```
1            THE COURT:  Let's find out if there's anything that
2    would interfere with your understanding or your decision-making
3    today.
4        Do you take any medication?
5            THE DEFENDANT:  I do.
6            THE COURT:  Tell me what you take.
7            THE DEFENDANT:  I take omeprazole for GERD, and I take
8    sleeping medication at night.
9            THE COURT:  Do either of those medications interfere
10   with your understanding or your decision-making?
11           THE DEFENDANT:  They do not.
12           THE COURT:  All right.  So you mentioned some sleeping
13   problems.  Let's find out if there are any other mental health
14   conditions or illnesses.
15           THE DEFENDANT:  There are not.
16           THE COURT:  All right.  And on the physical side of
17   things, you have some gastric reflux issues.  Any other physical
18   impairments, injuries?
19           THE DEFENDANT:  No.
20           THE COURT:  Are you addicted to drugs or alcohol?
21           THE DEFENDANT:  I am not.
22           THE COURT:  Other than the two medications we
23   discussed, are you under the influence of any drugs or alcohol
24   right now?
25           THE DEFENDANT:  I am not.
```

```
1              THE COURT:  Is there any other reason you would have a
2    hard time understanding what we're doing today or a hard time
3    making a decision about an important matter?
4              THE DEFENDANT:  There is not.
5              THE COURT:  Mr. Westbrook, have you talked with
6    Mr. Otis about the nature of the charges that you face?
7              THE DEFENDANT:  I have.
8              THE COURT:  Have you talked about the facts the
9    government thinks it could prove if the case went to trial?
10             THE DEFENDANT:  I have.
11             THE COURT:  Have you talked about whether you have any
12   defenses to the charges?
13             THE DEFENDANT:  I have.
14             THE COURT:  Have you talked about the United States
15   Sentencing Guidelines and how they could affect your sentence?
16             THE DEFENDANT:  I have.
17             THE COURT:  All right.  Tell me what you think you're
18   being charged with.
19             THE DEFENDANT:  I'm being charged with distribution of
20   child pornography for an incident that happened back in January
21   where I sent two Snapchats to a friend of mine, and the
22   Snapchats contained my 4-year-old child naked.
23             THE COURT:  All right.  You understand if I accept your
24   plea and find you guilty, you could be subject to the penalties
25   that Mr. Glinzak went over.  Do you understand that?
```

1        THE DEFENDANT:  I do.

2        THE COURT:  All right.  So assuming that you don't have

3    one of the predicate convictions that Mr. Glinzak mentioned, the

4    punishment for this offense would include a mandatory minimum 5

5    years incarceration and a maximum of 20 years incarceration.  Do

6    you understand that?

7        THE DEFENDANT:  I do.

8        THE COURT:  I could impose a fine of up to $250,000.

9    Do you understand that?

10        THE DEFENDANT:  I do.

11        THE COURT:  Any period of incarceration would be

12    followed by a period of supervised release that could be the

13    rest of your life.  Do you understand that?

14        THE DEFENDANT:  I do.

15        THE COURT:  All right.  There would also be certain

16    assessments that we'll determine at the time of sentencing.

17    Those assessments will have to include one for $100 for a felony

18    conviction.  Do you understand that?

19        THE DEFENDANT:  I do.

20        THE COURT:  There could be a special assessment, given

21    the nature of this offense, for $5,000.  Do you understand that?

22        THE DEFENDANT:  I do.

23        THE COURT:  There's another assessment that might apply

24    that could be up to $35,000.  Do you understand that?

25        THE DEFENDANT:  I do.

1           THE COURT:  All right.  You also understand that you'd

2     be required to register as a sex offender under the Sex Offender

3     Registration and Notification Act.  Do you understand that?

4           THE DEFENDANT:  I do.

5           THE COURT:  If there's a request for restitution, I

6     will award restitution and order you to pay it.  Do you

7     understand that?

8           THE DEFENDANT:  I do.

9           THE COURT:  If you did have another conviction that

10    qualified, the penalties would be increased to a mandatory

11    minimum of 15 years and a maximum of 40 years.  Do you

12    understand that?

13          THE DEFENDANT:  I do.

14          THE COURT:  All right.  Do you know how supervised

15    release works?

16          THE DEFENDANT:  I do.

17          THE COURT:  All right.  So you know that I would impose

18    certain conditions or restrictions on you.  You'd have to report

19    in regularly to a supervising officer, and if you were to

20    violate any of the conditions, I could revoke your supervised

21    release and send you back to prison because you violated the

22    conditions.  Do you understand all that?

23          THE DEFENDANT:  I do.

24          THE COURT:  All right.  Let's talk about the sentencing

25    process and the federal sentencing guidelines.

```
1          So a member of the probation office is going to prepare a
2    written presentence report.  That report will contain much of
3    the information I'll use in setting your sentence.  One of the
4    things the report will do will be to calculate the sentencing
5    range that's recommended under the United States Sentencing
6    Guidelines.  I want to talk for a minute about how the guideline
7    is calculated.
8          First of all, I want to make sure that you understand that
9    in calculating the guideline, we will look broadly at your
10   criminal conduct, and we will not be limited just to the charge
11   as it's written out in the indictment.  Do you understand that?
12             THE DEFENDANT:  I do.
13             THE COURT:  All right.  So in a case like this, one of
14   the things that the guidelines will look at is how many images
15   or videos you were involved in distributing and the nature of
16   those things, including how young the victims were and so on.
17   Do you understand all of that will be considered under the
18   guidelines?
19             THE DEFENDANT:  I do.
20             THE COURT:  The fact that you've accepted
21   responsibility by agreeing to plead guilty, assuming that
22   there's no reason to deny you that credit, that's a factor that
23   counts in your favor under the guidelines.  Do you understand
24   that?
25             THE DEFENDANT:  I do.
```

1          THE COURT:  Your criminal history gets considered under

2     the guidelines.  Do you understand that?

3          THE DEFENDANT:  I do.

4          THE COURT:  The general perspective of the guidelines

5     is to consider a broad range of factors about you and your

6     background and especially about your crime and how it was

7     committed.  Do you understand that?

8          THE DEFENDANT:  I do.

9          THE COURT:  Let's talk about the process.

10     So the presentence report will be prepared in a draft form.

11     I'll get a copy of that draft, you'll get a copy to review with

12     your lawyer, and the government will get a copy.  At that point

13     it's very important that you review the draft with your lawyer

14     because you have two weeks to make objections or ask for

15     corrections to that presentence report.  Do you understand that?

16          THE DEFENDANT:  I do.

17          THE COURT:  The government also has the opportunity,

18     the same two weeks, to make its objections or to ask for

19     corrections to the presentence report, and then at your

20     sentencing hearing -- or beforehand if people ask me to do it in

21     advance, but usually I do it at the sentencing hearing -- I'll

22     rule on any objections to the presentence report, and I'll make

23     a final determination about what should go in your presentence

24     report and what the final correctly calculated guideline range

25     should be.  Do you understand that?

1          THE DEFENDANT:  I do.

2          THE COURT:  Here's the most important thing to take

3    away from our discussion of the guidelines:  The guidelines are

4    only advisory.  I will consider them, but I don't have to follow

5    them.  I can go above the guidelines or below the guidelines if

6    I think that's appropriate after I consider everything that the

7    law tells me to consider.  Do you understand that?

8          THE DEFENDANT:  I do.

9          THE COURT:  All right.  The statutory range though,

10   that's not part of the guidelines, so I have to impose at least

11   a 5-year sentence, and the sentence could be as long as 20 years

12   according to the statute, regardless of what the guidelines say.

13   Do you understand that?

14         THE DEFENDANT:  I do.

15         THE COURT:  By pleading guilty today, you would give up

16   some constitutional rights that you have as a person who has

17   been accused of a crime.  I want to review some of those rights

18   with you.

19        First of all, do you understand that under the Constitution

20   of the United States, no one can be forced to admit that they

21   have committed a crime?

22         THE DEFENDANT:  I do.

23         THE COURT:  That means you don't have to plead guilty.

24   You can stick with a plea of not guilty.  Do you understand

25   that?

```
 1                    THE DEFENDANT:  I do.

 2                    THE COURT:  And, ultimately, what it means is that you

 3       have the right to go to a trial and have a jury decide if you're

 4       guilty.  Do you understand that?

 5                    THE DEFENDANT:  I do.

 6                    THE COURT:  And you know you could be convicted only if

 7       all 12 members of the jury unanimously agree that the government

 8       has proved that you're guilty beyond a reasonable doubt.  Do you

 9       understand that?

10                    THE DEFENDANT:  I do.

11                    THE COURT:  You and your lawyer would be able to help

12       pick the people who would serve on the jury.  Do you understand

13       that?

14                    THE DEFENDANT:  I do.

15                    THE COURT:  Your right against self-incrimination also

16       means that if the case went to trial, you wouldn't have to

17       testify or say anything at all, and I'd have to tell the jury

18       they couldn't hold it against you in any way.  Do you understand

19       that?

20                    THE DEFENDANT:  I do.

21                    THE COURT:  You wouldn't have to testify, but if you

22       wanted to, you'd have the right to do that.  Do you understand

23       you'd have the right to testify if you wanted to?

24                    THE DEFENDANT:  I do.

25                    THE COURT:  You'd also have the right to do what we
```

1  call confront and cross-examine the government's witnesses.

2  That means you could face them in the courtroom when they

3  testified, and you could have your lawyer ask them questions.

4  Do you understand that?

5      THE DEFENDANT:  I do.

6      THE COURT:  You'd also have the right to call your own

7  witnesses, and even if those witnesses did not want to testify,

8  you could use a subpoena to force them to come to court and

9  testify.  Do you understand?

10      THE DEFENDANT:  I do.

11      THE COURT:  A felony offense affects your civil rights

12  outside the scope of this proceeding, and I want to review some

13  of the ways that can happen.

14      Depending on the law where you live, for a time after

15  you've been convicted of a felony, you may not have the right to

16  vote, the right to hold public office, or the right to serve on

17  a jury.  Do you understand that?

18      THE DEFENDANT:  I do.

19      THE COURT:  This next part doesn't depend on the law

20  where you live because it's true under the United States' law,

21  but it's also true under the law of most states, and that is

22  that once you've been convicted of a felony, you're permanently

23  deprived of the right to possess any kind of firearm or

24  ammunition for a firearm, and if you did possess a firearm or

25  ammunition, you could be charged with a new crime for that.  Do

1    you understand?

2           THE DEFENDANT:  I do.

3           THE COURT:  If you were not a United States citizen, a

4    felony conviction could affect your residency or immigration

5    status and could result in immigration-related penalties,

6    including deportation from the United States.  Do you understand

7    that?

8           THE DEFENDANT:  I do.

9           THE COURT:  Last point about your rights is that you

10    have the right to an attorney through all phases of this

11    proceeding.  That includes an attorney appointed at government

12    expense if you can't afford one.  Do you understand you have the

13    right to an attorney?

14           THE DEFENDANT:  I do.

15           THE COURT:  Our next task is to review the plea

16    agreement, make sure that it's voluntary.

17    So I have the plea agreement here.  It's been docketed on

18    the docket of the case as Document No. 44.  It's several pages

19    long.  At the end of it, there's your name and a space for your

20    signature.  There's also an acknowledgements page that has your

21    name and a space for your signature, and it looks to me like you

22    signed both these documents.

23    Did you sign them both, Mr. Westbrook?

24           THE DEFENDANT:  I have.

25           THE COURT:  Did you read them carefully before you

1  signed them?

2          THE DEFENDANT:  I did.

3          THE COURT:  And do these documents contain your

4  agreement with the government about your plea?

5          THE DEFENDANT:  They do.

6          THE COURT:  Mr. Otis, do these documents contain your

7  agreement with the government about Mr. Westbrook's plea?

8          MR. OTIS:  Yes, Your Honor.

9          THE COURT:  Mr. Glinzak, is this the government's

10  agreement with Mr. Westbrook about his plea?

11          MR. GLINZAK:  It is, Your Honor.

12          THE COURT:  All right.  There's a few points that I

13  want to go over to make sure that we're crystal clear on.

14      I'll start with this one:  This is what we call a binding

15  plea agreement, and what that means is that if I accept this

16  plea agreement, I'm bound to sentence you according to the terms

17  of the plea agreement, which call for a sentence of at least 8

18  years and no more than 12 years in prison.  Do you understand

19  that?

20          THE DEFENDANT:  I do.

21          THE COURT:  All right.  I don't have to accept the plea

22  agreement, but if I don't accept the plea agreement because I

23  decide that a sentence of between 8 and 12 years is not a

24  reasonable and just one, then I would give you the chance to

25  withdraw your guilty plea.  Do you understand?

1          THE DEFENDANT:  I do.

2          THE COURT:  That's about the only way you could get to

3     withdraw your guilty plea.  Do you understand?

4          THE DEFENDANT:  I do.

5          THE COURT:  All right.  Also, this agreement -- plea

6     agreement also contains an appeal waiver.  So normally, unless

7     there's an agreement like the one in your plea agreement, you'd

8     have the right to appeal the sentence I impose if you thought

9     the sentence was unreasonable or unlawful, and there may be some

10    ways you could appeal your plea, but under this agreement, as

11    long as I sentence you to 12 years or less, you're giving up

12    your right to appeal.  Do you understand that?

13         THE DEFENDANT:  I do.

14         THE COURT:  All right.  This isn't in the plea

15    agreement, but I want to make sure we're crystal clear about

16    this.  There's a motion to suppress pending -- there's a motion

17    to suppress pending, and by entering this guilty plea without

18    reserving your right to appeal any decision on that motion to

19    suppress, you're giving up that motion to suppress.  Do you

20    understand that?

21         THE DEFENDANT:  I do.

22         THE COURT:  All right.  There is also a forfeiture

23    allegation here, and there's some handwritten notes in the

24    margin, so I just wanted to go on the record and make sure that

25    we're clear about what is going to be subject to forfeiture.

```
1          And so it looks like there's a Mac desktop that is excepted
2     from the forfeiture agreement; is that correct?
3          MR. GLINZAK:  That is correct, Your Honor.
4          THE COURT:  All right.  Otherwise, all the property in
5     the notice is subject to forfeiture, and you're agreeing to
6     that.  Do you understand that?
7          THE DEFENDANT:  Yes.
8          THE COURT:  Okay.  Any other exceptions?
9          MR. GLINZAK:  No.
10         THE COURT:  Okay.  All right.  One other thing I might
11    as well be clear about too, there's a reference to dismissing
12    the conduct in the Eastern District of Wisconsin.  I understand
13    that that is going to be part of the relevant conduct that will
14    be considered at sentencing.
15         Mr. Glinzak, is that right?
16         MS. ALTMAN:  Your Honor, I had most of the contact with
17    the Eastern District.  That is to be considered here.  They have
18    not charged it.  We were just made aware of it last month, so
19    it's not dismissing so much as covering --
20         THE COURT:  Okay.  So it's -- but the agreement is that
21    there will be no charges stemming from that, but I want to be
22    clear I can -- I will be considering as soon as -- assuming that
23    it shows up in the presentence report, that's the kind of extra
24    conduct that I think would be considered as relevant conduct.
25         MS. ALTMAN:  That is our intent, Your Honor.
```

1           MR. OTIS:  That's correct.

2           THE COURT:  All right.  All right.  Mr. Westbrook, did

3    anyone make any other promises to get you to plead guilty

4    besides what's in the plea agreement?

5           THE DEFENDANT:  No.

6           THE COURT:  Anyone threaten you or try to force you to

7    plead guilty?

8           THE DEFENDANT:  No.

9           THE COURT:  All right.  Did anyone tell you that you'll

10   get some particular sentence other than the provision in the

11   plea agreement that requires me, if I accept it, to sentence you

12   to a sentence of between 8 and 12 years?

13          THE DEFENDANT:  No.

14          THE COURT:  Do you understand that the sentencing

15   decision will be up to me?

16          THE DEFENDANT:  I do.

17          THE COURT:  All right.  I'll consider the guidelines,

18   I'll consider any recommendations, any arguments from both

19   sides, but I don't have to follow any of those things, and as

20   long as I sentence you to between 8 and 12 years, you will not

21   be -- there will be no basis for you to withdraw your guilty

22   plea.  Do you understand?

23          THE DEFENDANT:  I do.

24          THE COURT:  All right.  Our next task is to determine

25   whether there's a factual basis for the plea, and so the factual

1    basis is written out in Section 7 of the plea agreement.  So

2    I'll direct your attention to that.  That contains a written

3    statement of the factual basis, and, Mr. Westbrook, I asked you

4    before if you had read the plea agreement carefully.  You said

5    you had.  But let me ask you specifically about Section 7, the

6    factual basis.

7         Did you review that section carefully before you signed the

8    plea agreement?

9              THE DEFENDANT:  I did.

10             THE COURT:  And do you agree the government can prove

11   all of those facts beyond a reasonable doubt?

12             THE DEFENDANT:  I do.

13             THE COURT:  All right.  And, Mr. Otis, do you agree the

14   government can prove those facts beyond a reasonable doubt?

15             MR. OTIS:  I do.

16             THE COURT:  Mr. Glinzak, is there anything else the

17   government would like to submit to support the factual basis?

18             MR. GLINZAK:  No, Your Honor.

19             THE COURT:  All right.  Mr. Westbrook, part of what the

20   government would have to prove involves what you know -- what

21   you knew and what you intended.  So the facts are there, but let

22   me just confirm that you knew that you had a file involving a

23   prepubescent male child as described in the factual basis; is

24   that correct?

25             THE DEFENDANT:  I did.

1          THE COURT:  All right.  And that you intentionally

2     distributed that to another person?

3          THE DEFENDANT:  I did.

4          THE COURT:  All right.  And you knew that that image

5     involved a prepubescent child engaged in sexually explicit

6     conduct?

7          THE DEFENDANT:  Yes.  I knew that the conduct that's

8     alleged here was what was happening.

9          THE COURT:  All right.  Mr. Glinzak, is there anything

10     else you think I need to review?

11          MR. GLINZAK:  No, Your Honor.

12          THE COURT:  All right.  Then, Mr. Westbrook, I will ask

13     what is your plea to Count 1 of the indictment?

14          THE DEFENDANT:  Guilty.

15          THE COURT:  On the basis of this discussion with you

16     and your attorney and on the basis of the record of the case as

17     a whole, I'm satisfied that you've entered a plea of guilty

18     knowingly and voluntarily after you had an adequate opportunity

19     to consult with your attorney and that you understand both the

20     nature of the charge and the consequences of a plea of guilty.

21     I'm also satisfied that there's a factual basis for the plea.

22     Accordingly, I find and adjudge you guilty of the charge

23     contained in the indictment.  I accept the plea agreement

24     conditionally pending my review of the presentence report.

25          I understand from Mariah Stieve, who is the probation

1    officer who's preparing the presentence report, that the parties

2    have agreed on the schedule.  So let me read it off, and you can

3    confirm to me that you've agreed to this.  And that is that

4    Ms. Stieve will have the first draft of the presentence report

5    available on November 1st.  That makes your objections due two

6    weeks later on November 15th, and then the sentencing hearing

7    would be on December 5th.

8         Is that the agreement of the parties, Mr. Glinzak?

9              MR. GLINZAK:  Yes, Your Honor.

10             THE COURT:  Okay.  Mr. Otis?

11             MR. OTIS:  Yes.

12             THE COURT:  Okay.  December 5th will work.  I'm going

13   to suggest that we do this at -- I have a hearing at 10:00, so I

14   don't know if this -- I maybe could do this at 9:00, but it

15   seems like that's a little bit tight.  Why don't we do this at

16   11:30.

17        Does that work for you, Mr. Otis, for the defense?

18             MR. OTIS:  I believe so, but let me just double-check.

19   11:30 on the 5th?

20             THE COURT:  Yes.

21             MR. OTIS:  That's fine.

22             THE COURT:  For the government?

23             MR. GLINZAK:  It works, Your Honor.

24             THE COURT:  All right.  Let's do that.  All right.  So

25   November 1st, that's the presentence report; objections due two

1    weeks later on November 15th; 11:30 a.m. sentencing hearing on

2    Thursday, December 5th.

3          And the usual things that I need in connection with the

4    sentencing, letters in support, sentencing memorandum, I need

5    those two business days in advance.  That would be on Tuesday,

6    the 3rd.  If there's anything more complicated that comes up,

7    please let me and the other side know so that we can plan for

8    it.

9          Is there anything else we need to address today,

10   Mr. Glinzak?

11              MR. GLINZAK:  No, Your Honor.

12              THE COURT:  What about the defendant's continued

13   release?  I infer from that that you have no objections to his

14   continued release on conditions?

15              MS. ALTMAN:  No, Your Honor.  We anticipate that he

16   would go into custody today.

17              THE COURT:  You do anticipate that.  All right.

18              MR. OTIS:  And we're not objecting.

19              THE COURT:  All right.  Very good.  All right.  I'll

20   remand you into custody.  All right.  Thank you, all.

21              MR. OTIS:  Thank you.

22              THE COURT:  This Honorable Court stands adjourned.

23          (Proceedings concluded at 10:25 a.m.)

24                            ***

25

1    I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit

2    Reporter in and for the State of Wisconsin, certify that the

3    foregoing is a true and accurate record of the proceedings held

4    on the 16th day of September, 2024, before the Honorable

5    James D. Peterson, Chief U.S. District Judge for the Western

6    District of Wisconsin, in my presence and reduced to writing in

7    accordance with my stenographic notes made at said time and

8    place.

9    Dated this 1st day of July, 2025.

10

11

12

13

14

15                          /s/ Jennifer L. Dobbratz

16                   Jennifer L. Dobbratz, RMR, CRR, CRC
                            Federal Court Reporter
17

18

19

20

21

22

23

24    The foregoing certification of this transcript does not
     apply to any reproduction of the same by any means unless under
25    the direct control and/or direction of the certifying reporter.