## Declaration of Adam Westbrook

I, Adam Westbrook, would testify at an evidentiary hearing to the following:

1. In February 2024, I retained attorney Nathan Otis to represent me in this case.

2. In March 2024, I was released and placed on home detention. During this time, I had limited internet access that did not provide the ability to do any independent legal research.

3. In July 2024, Otis told me that the government had made a plea offer. It was a binding agreement that called for a plea to the charge of distribution of obscenity and a sentence of 5 years in custody and five years of supervised release. I rejected the offer because I wanted to go to trial.

4. On or about September 1, 2024, Otis called me to tell me that the government had new evidence against me. Otis had met with AUSA Altman to discuss scheduling and the pending motion to suppress, but was told that there were new allegations against me. Otis told me that he was able to view certain documents regarding criminal conduct alleged to have occurred in the Eastern District of Wisconsin. Otis told me that there was a child pornography investigation in the United Kingdom involving a chat group on the app Telegram. In order to gain access to this group, users were required to submit a photo of a nude child with a sign stating the name of the group: "Dads and Uncles." One user had uploaded an image that looked like it could be my son. Otis told me that one of the undercover investigators had received a message from a group member informing him that that user posted a picture showing containing an name and address and the name was "Adam Westbrook." Otis said that the username related to Batman. In addition to the photograph, that user also posted a video containing child pornography.

5. Otis told me that this new evidence meant we would lose at trial. He said that the evidence would be admitted against me and that even if this user was not me, the fact that someone said it was "Adam Westbrook" and that there was child pornography posted in the group would be admitted. Given this, Otis told me that the images would be found to be sexually explicit and no jury would vote to acquit. He told me that I should plead guilty or risk a substantially longer sentence when ultimately found guilty at trial.

1

6. A few days later, we spoke again. Otis told me that he negotiated with AUSA Altman and they agreed on a binding plea agreement that called for a plea to distribution of child pornography and a sentencing range of 8-12 years. I told him that I understood the new evidence was damaging to our trial case but that I had not captured images with a sexual purpose. Either during this conversation or a previous conversation, I asked Otis to explore whether I could enter an *Alford* plea or a plea of no contest. Otis advised him that neither of those are an option in federal court. In light of all this, I told Otis that I would consider a plea agreement if it was the best option best option, but I wouldn't lie and to obtain a plea agreement that only contained facts that I could swear were true.

7. On September 10, 2024, I read the written plea agreement. All of the facts in it were true. So based on Otis's advice, I signed the agreement.

8. On September 16, 2024, I appeared in court for my guilty plea hearing. I truthfully answered the questions based on my understanding of the case. This included my belief, based on Otis's advice that, under the Seventh Circuit definitions, my intent did not matter and the government could prove beyond a reasonable doubt that the images were sexually explicit. I pleaded guilty.

9. At that hearing, I was taken into custody and held at the Jefferson County Jail. Once in jail, I had access to a law library with internet access, and was able to do legal research.

10. In October 2024, Otis received the new evidence and brought it to the jail for me to review. The reports contained very little information and did not name the people providing the information. More importantly, this confirmed that the user was not me. But the images were photos of screens, so I asked Otis to obtain the original photos and messages.

11. I told Otis at that visit that I wanted to withdraw my guilty plea. Otis told me to wait until we could gather more information.

12. The next time I spoke with Otis, he reported that the AUSA said they did not have original images of the evidence. I again said I wanted to withdraw my plea. Otis told me to wait until the PSR was completed to make decisions. Although I wanted to file the motion, I agreed to wait.

13. Next, Otis visited me with the PSR. I told him I wished to object to the statements attributing the UK Telegram activity to me. Otis said he would not file that objection because it would be seen as not accepting responsibility.

14. Soon after, I requested that Otis withdraw as my attorney and I was appointed to be represented by the Federal Defender's Office.

I certify under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

10-31-25
Date

_(signature)_
Adam Westbrook

10/31/25
Date

_(signature)_
Signature of Notary
State of Wisconsin
County of Columbia
Commission expires: 3/5/28

_[Notary seal: KATHLEEN D. ROZMARYNOSKI, NOTARY PUBLIC, STATE OF WISCONSIN]_

3