IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

ADAM J. WESTBROOK,

Defendant.

OPINION and ORDER

24-cv-19-jdp

---

Defendant Adam J. Westbrook is charged in a single-count indictment with distribution of two videos that constitute child pornography, in violation of 18 U.S.C. § 2252(a)(2). Dkt. 2. Westbrook signed a binding plea agreement calling for a sentence of eight to 12 years. Dkt. 44. He pleaded guilty at a hearing on September 16, 2024. A presentence investigation report was prepared; the parties filed their objections; the report was revised. A few days after the filing of the revised report, Westbrook's counsel moved to withdraw. Now, with new counsel, Westbrook seeks to withdraw his guilty plea. Dkt. 67. The government opposes. Dkt. 73.

The gist of Westbrook's argument is that the charged videos are not child pornography because, when he recorded the videos, he did not intend to create images of sexually explicit conduct. His lack of intent, the argument goes, would at least be a factor that the jury would have to consider, and on that basis he would have a viable defense. He didn't realize this when he pleaded guilty, and thus his plea was not entered knowingly. He also contends that he had been ineffectively represented, because his prior counsel had advised him to plead guilty before Westbrook had the chance to review evidence related to some uncharged conduct that the government would present at trial.

The court is not persuaded. Westbrook's disavowal of intent to create images of sexually explicit conduct cannot overcome the objective character of the two videos, which plainly depict the lascivious display of minor A's genitals. The context in which Westbrook made and distributed the videos only reinforces their lascivious nature. For reasons explained more fully below, the court concludes that Westbrook was effectively advised and that his plea was entered knowingly. The motion will be denied.

BACKGROUND

Westbrook is charged with using Snapchat to send two videos of minor A engaged in sexually explicit conduct. Dkt. 2. Minor A is defendant's adopted son, four years old when the videos were recorded. Dkt. 50 (revised presentence report) ¶ 27. Section 7 of the plea agreement contains a written statement of the factual basis outlining the offense. In summary: in January 2024, from a hotel in the Wisconsin Dells, Westbrook sent two files by Snapchat to the phone of a man in Kenosha who was under investigation for sex crimes. The files were:

A. a file ending in 924 that shows a prepubescent male child fully nude in a "down dog" position on a bed with his buttocks facing the camera. His penis is visible.

B. a file ending in 980 that shows the same child lying on his stomach on the bed. The focus of the video is the child's buttocks with a small amount of scrotum. The child is moving his buttocks up and down.

Dkt. 44 at 2.

At his plea hearing, Westbook admitted that the government could prove all of the facts in the written factual basis beyond a reasonable doubt. Dkt. 59 at 19:10–11. Westbrook also admitted that he knew that the images involved a prepubescent minor engaged in sexually explicit conduct. Dkt. 59 at 20:4–8.

Shortly after the revised presentence report was prepared, Westbrook's retained counsel, Nate Otis, moved to withdraw. Dkt. 52. After an ex parte hearing, Magistrate Judge Stephen Crocker granted the motion. Dkt. 54. Attorneys from the Federal Defender Office were appointed to represent Westbrook. Westbrook moved to withdraw his plea, Dkt. 67, and the government opposed. Dkt. 73.

At that point, the court asked the government to provide the charged videos for the court's review. The government responded with a supplemental opposition, arguing that the court did not need to review the videos, but that if it did so, the court should also review other evidence that provides context for the charged videos. Dkt. 74. The court agreed that it would review the charged videos and the government's contextual evidence. Westbrook objected to the review of the contextual evidence, Dkt. 76, and asked for an evidentiary hearing, Dkt. 78.

The court reviewed the charged videos and the government's contextual evidence in chambers, with attorneys for the government and counsel for Westbrook present. The investigating agent showed the court the evidence on an FBI laptop with a minimum of identifying explanation. The court did not hear any argument about the evidence from either side. After the court's review of the evidence, Westbrook filed a substantive response to the government's evidence. Dkt. 79.

## ANALYSIS

A defendant has no right to withdraw his guilty plea before sentencing, but a court may allow him to do so for a "fair and just reason." *United States v. Carroll*, 412 F.3d 787, 792 (7th Cir. 2005) (quoting *United States v. Wallace*, 276 F.3d 360, 366 (7th Cir.2002)). A defendant, like Westbrook, who seeks to withdraw his plea after a thorough Rule 11 colloquy faces an

"uphill battle." *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008) (quoting *United States v. Bradley*, 381 F.3d 641, 645 (7th Cir. 2004)). A defendant's sworn statements at the plea hearing are presumed true, and that presumption is overcome only if the defendant satisfies a heavy burden of persuasion. *United States v. Logan*, 244 F.3d 553, 558 (7th Cir. 2001).

The court of appeals has recognized three broad reasons that may justify the withdrawal of a plea: "(1) the defendant is innocent, (2) the defendant received ineffective assistance of counsel, and (3) the plea was not knowing and voluntary." *United States v. Kamkarian*, 79 F.4th 889, 892 (7th Cir. 2023). Westbrook argues that each of these three reasons justify his request to withdraw his plea.

The foundational question here is whether the two videos depict a minor engaged in "sexually explicit conduct," which is an element of a charge under 18 U.S.C. § 2252(a)(2). The term "sexually explicit conduct" is defined in § 2256, which provides definitions for Chapter 110 offenses. There are no sex acts depicted in the charged videos, so the pertinent part of the definition is:

> "sexually explicit conduct" means actual or simulated . . . lascivious exhibition of the anus, genitals, or pubic area of any person;

§ 2256(2)(A)(v). All agree that nudity is not enough to meet this definition. It's not enough that the charged material shows the anus, genitals, or pubic area of a person. The depiction must be a "lascivious exhibition," a concept that courts have struggled to define with precision.

As the parties acknowledge, our best guidance comes from *United States v. Donoho*, 76 F.4th 588 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 2683 (2024). The court of appeals defined "lascivious" to mean "tending to arouse sexual desire." *Id*. at 598 (citing *United States v. Miller*, 829 F.3d 519, 524 (7th Cir. 2016), which relied on a dictionary definition of the term). Given

that meaning of "lascivious," the court reasoned that the intent of the person creating the image *informs* the determination of whether the imaged depicts a lascivious exhibition. *Donoho* 76 F.4th at 598. But intent may never be the *sole* consideration, because an image does not depict a lascivious exhibition merely because the defendant finds it arousing. *Id.*

The *Donoho* court made clear that lasciviousness "must be an objective quality" and that "the primary focus in evaluating the legality of the charged photographs [or videos] must be on the images themselves." *Id.* (quoting *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011). In some circumstances, evidence and motive and intent will help put the image in context. *Id.* As the court explained, "[d]epictions of otherwise innocent conduct may in fact constitute a 'lascivious exhibition of the genitals or pubic area' of a minor based on the actions of the individual creating the depiction." *Id.* (citing *United States v. Holmes*, 814 F.3d 1246, 1251–52 (11th Cir. 2016)).

So, under the *Donoho* approach, in determining whether an image depicts a lascivious exhibition, the image itself is primary. But the trier of fact may also consider the surrounding context, including the motive and intent of the defendant to see if the context confirms or negates the putative lasciviousness of the image.

One final point before taking up the details of Westbrook's argument. Whether an image depicts a lascivious exhibition is a question for the trier of fact. *Donoho* 76 F.4th at 598. The court's task here is not to determine Westbrook's guilt or innocence. But, in deciding whether Westbrook's motion provides a "fair and just reason" for withdrawing his guilty plea, the court must examine the plausibility of his argument that his lack of intent would negate any lasciviousness of the images themselves.

## A. Actual innocence

Westbrook contends that he is both factually and legally innocent because he did not have the subjective intent to capture sexually explicit conduct when he recorded the videos of the child. As he puts it in his brief:

> Westbrook has always maintained that he did not intend the charged images to capture sexually explicit conduct. He has maintained his factual innocence and, given a complete understanding of the legal concepts at issue, in particular the definition of "sexually explicit conduct," he maintains his legal innocence.

Dkt. 67 at 11–12.

There are multiple problems with Westbrook's actual innocence argument.

First, Westbrook's argument contradicts his sworn testimony at his plea colloquy. At the hearing, he acknowledged that he had carefully read the written statement of the factual basis in the plea agreement, and he agreed that the government could prove those facts beyond a reasonable doubt. Dkt. 59 at 19:7–9. The court followed up with specific questions about his knowledge and intent:

> THE COURT: All right. Mr. Westbrook, part of what the government would have to prove involves what you know—what you knew and what you intended. So the facts are there, but let me just confirm that you knew that you had a file involving a prepubescent male child as described in the factual basis; is that correct?
>
> THE DEFENDANT: I did.
>
> THE COURT: All right. And that you intentionally distributed that to another person?
>
> THE DEFENDANT: I did.
>
> THE COURT: All right. And you knew that that image involved a prepubescent child engaged in sexually explicit conduct?

> THE DEFENDANT: Yes. I knew that the conduct that's alleged
> here was what was happening.

*Id.* at 19:19–20:8. Westbrook admitted that he "knew that that image involved a prepubescent child engaged in sexually explicit conduct."

Second, Westbrook's intent at the time he recorded the videos is at most a secondary consideration. Westbrook is not charged with the production of child pornography; he's charged with distribution. So what matters most is whether he knew when he distributed the files that they contained a visual depiction of a child engaging in sexually explicit conduct. At the plea hearing, he admitted that he knew that. His conduct confirms that: he had been engaging in sexually explicit conversations with the man in Kenosha, where they shared their interests in sexual activity with children. Westbrook sent the videos to the Kenosha man because Westbrook knew that he would find them arousing.

Third, the charged videos themselves are the primary consideration under *Donoho*. The descriptions of the videos in the factual basis are accurate, but they can't give a full effect of the videos themselves, which is why the court decided to review them. The two videos are edited down to nine seconds each, capturing brief, focused moments when minor A was most exposed. In Video A, minor A has his butt up in the air, with his face down on the bed, legs parted. His penis and scrotum are clearly visible. And the position of the phone/camera is close behind minor A, just far enough back to get a full body view from the rear. Video B is a close up of minor A's buttocks, with his scrotum visible. The exclusion of the face and head in video B is one of the hallmarks of a lasciviousness cited in *Donoho*, 76 F. 4th at 598. These are plainly not benign depictions of incidental child nudity that a decent parent might capture.

Westbrook contends now that he did not intend the charged images to capture sexually explicit conduct. But he doesn't point to anything—besides his own disavowal of that intent—

that would undermine lascivious qualities of the videos themselves. And the context in which Westbrook sent these images to the Kenosha man undermines Westbrook's disavowal of his intent to depict sexually explicit conduct.

The court concludes that Westbrook has not made a plausible case that he is actually innocent of the charge to which he pleaded guilty.

## B. Plea entered knowingly

Westbrook contends that his plea was not entered knowingly, because he didn't understand that his intent was relevant to whether the charged videos were depictions of sexually explicit conduct.

As explained above, Westbrook expressly admitted under oath at the plea hearing that he knew that the charged videos depicted a prepubescent child engaged in sexually explicit conduct. And, even in his brief in support of his motion, he concedes that "the evidence would prove that the images were sexually explicit." Dkt. 67 at 10. Westbrook contends now that his response at the plea hearing was equivocal, because after he said "yes," he added "I knew that the conduct that's alleged here was what was happening." *Id*. Westbrook is a lawyer himself; if he intended to qualify his response on the basis of his lack of intent, he could have done so. He expressed no uncertainty about his understanding of the charge or his intent to plead guilty.

Also as explained above, the videos themselves are the focus, with intent playing a secondary role. And even now, Westbrook seems to recognize that the lasciviousness of the videos themselves would be enough to carry the day.

The court concludes that Westbrook entered a knowing plea of guilty.

### C. Ineffective assistance of counsel

The government presented Westbrook with the evidence concerning his sending the two videos to the Kenosha man and offered a binding plea to an obscenity charge, with a five-year term of supervised release followed by a five-year term of supervised release. Westbrook turned it down.

Then the government discovered a new line of evidence, which suggested that Westbrook had participated in "Dads and Uncles," an online pedophile group based in the United Kingdom. Westbrook's attorney at the time, Nate Otis, wasn't able to review all the government's evidence concerning the Dads and Uncles group. But nevertheless, he advised Westbrook that the Dads and Uncles evidence would be admitted against him, and that he should plead guilty to avoid a harsher sentence after a trial. Otis negotiated the plea agreement that Westbrook signed. Now Westbrook contends that Otis was ineffective for advising him to plead before Otis had the chance to review all the government's Dads and Uncles evidence, and before Westbrook had the chance to see any of it himself.

Claims of ineffective assistance of counsel are governed by the two-part test in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel provided ineffective assistance, Westbrook must show that Otis's performance was deficient and that the deficient performance prejudiced Westbrook. *Strickland*, 466 U.S. at 687. To prove deficient performance, Westbrook must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To prove prejudice in the context of a guilty plea, Westbrook must show a reasonable probability that, but for counsel's deficient

performance, he would not have pleaded guilty and would have gone to trial. *Lee v. United States*, 582 U.S. 357, 365 (2017).

Westbrook's argument on ineffective assistance is a scant two paragraphs. It doesn't establish that counsel was deficient, so it is not necessary to consider prejudice.

A defendant may enter a knowing and voluntary plea without receiving full discovery. *United States v. Underwood*, 174 F.3d 850, 853 (7th Cir. 1999). Westbrook contends that, now that he's had the chance to review it, the Dads and Uncles evidence could be contested, and that it does not necessarily show that Westbrook participated in the group. But Westbrook does not develop an argument that Otis was wrong in his advice that the Dads and Uncles evidence would be admitted and would be highly prejudicial to Westbrook's case. Even if the evidence fell short of showing that Westbrook was a participant in the Dads and Uncles group, it would show that he had further distributed images from Minor A.

The court sees nothing deficient in Otis's performance, and nothing compelling in Westbrook's meager attack on the admissibility of the Dads and Uncles evidence. The court concludes that Westbrook's motion to withdraw his plea is simply Westbrook's own reluctance to take responsibility for the crime he has admitted to.

ORDER

IT IS ORDERED that:

1.  Defendant Adam Westbrook's motion to withdraw his plea, Dkt. 67, is DENIED.

2.  Westbrook's motion for an evidentiary hearing, Dkt. 78, is DENIED.

3.  Westbrook's motion to seal, Dkt. 80, is GRANTED.

4.  The parties may file any additional objections to the revised presentence report no later January 15, 2026. The sentencing hearing will be at 10:00 a.m., February 6, 2026.

Entered December 23, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge